**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**AARON L. TURNER, SR.,**

     **Plaintiff,**

         **v.**                             **CASE NO. 25-3019-JWL**

**KANSAS COURT OF APPEALS, et al.,**

     **Defendants.**

**MEMORANDUM AND ORDER**
**TO SHOW CAUSE**

     Plaintiff Aaron L. Turner, Sr., is hereby required to show good cause, in writing, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**I. Nature of the Matter before the Court**

     Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in custody at the El Dorado Correctional Facility in El Dorado, Kansas. The Court granted Plaintiff leave to proceed in forma pauperis (Doc. 6).

     Plaintiff's claims relate to his state criminal proceedings. In March of 2022, Plaintiff was convicted of four counts of aggravated robbery and three counts of criminal possession of a firearm in the District Court of Wyandotte County, Kansas. (Doc. 1-1, at 2.) Plaintiff appealed, and his appeal was rejected by the Kansas Court of Appeals ("KCA"). Plaintiff states that he represented himself throughout the trial and appeal, except for a brief period when he was represented by appointed attorneys from the Kansas Appellate Defender Office.

     Plaintiff complains about the investigation leading to his arrest, the trial, the KCA, the

appellate clerk's office, and his appointed appellate counsel. To summarize, Plaintiff alleges that he was forced to file his appellate brief without a copy of the trial court record; that he did not receive the State's brief on appeal; that the clerk's office gave him false information about appellate procedure and failed to file some of Plaintiff's submissions; that his appointed attorney filed a brief without consulting him that did not raise any of the issues Plaintiff had preserved; that the KCA did not follow the law and disregarded the record; that the KCA released its mandate before sending out its opinion, "running out" the time for Plaintiff file a petition for review; and that he was denied the right to seek review by the Kansas Supreme Court or the U.S. Supreme Court.

The Complaint also includes allegations about Plaintiff's trial. He alleges, in part, that his motion to suppress should not have been denied; that the police made material misrepresentations in the application for a search warrant; that he was arrested without probable cause; that evidence should not have been brought across state lines; that his firearm convictions were multiplicious; that there was not sufficient evidence to support his conviction for robbery of Mary Gunderson; that his motion in limine should not have been denied; that Gunderson provided perjured testimony; that there was prosecutorial error, including leading a witness into a fraudulent identification of Plaintiff and doctoring or withholding portions of the record; and that evidence allegedly found in Plaintiff's apartment was not reliable.

The Complaint (Docs. 1 and 1-1) is 98 pages long and includes either 164 counts (Doc. 1, at 96) or 242 counts (Doc. 1-1, at 4), by Plaintiff's count. Nearly all assert due process violations, with the exception of four Eighth Amendment counts, a Fourth Amendment count, and a Fifth Amendment count.

Plaintiff names the following defendants: the Kansas Court of Appeals; the City of Topeka;

Anthony T. Bukaty, clerk's office; Darrin Harris, clerk's office; David Burns, judge; P.J. Hill, judge; Mary E. Christopher, judge; Sam Shirer, attorney with the Kansas Appellate Defender Office; the Wyandotte County District Court; the City of Kansas City, Kansas; Michael Russell, judge; Chris Herndon, court reporter; Adam Cederburg; Tonda Hill, Wyandotte County District Attorney's Office; Mark Dupree, Sr., Wyandotte County District Attorney's Office; (fnu) Lee, Detective, Kansas City, Kansas Police Department; (fnu) Varnano, Detective, Kansas City, Kansas Police Department; the Clay County Police Department; Peter Neukirch, Detective; and Clay County, Missouri.

Plaintiff seeks to have his appeal overturned, his criminal case dismissed, $566.6 million in compensatory, punitive, and emotional distress damages, and the return of all his personal property. (Doc. 1-1, at 96.)

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings

drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the

complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Habeas Nature of Claims

To the extent Plaintiff challenges the validity of his convictions and sentence in his state criminal case, his federal claim must be presented in habeas corpus.  "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*"  *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added).  When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement.  *Heck v. Humphrey*, 512 U.S. 477, 482 (1994); *see also Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) (exhaustion of state court remedies is required by prisoner seeking habeas corpus relief); *see* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of available state court remedies).  Therefore, any claim challenging Plaintiff's state convictions and sentence is not cognizable in a § 1983 action.

### 2. *Heck* Bar

Before Plaintiff may proceed in a federal civil action for monetary damages based upon an invalid conviction or sentence, he must show that his conviction or sentence has been overturned, reversed, or otherwise called into question. *Heck*, 512 U.S. 477. If Plaintiff has been convicted and a judgment on Plaintiff's claims in this case would necessarily imply the invalidity of that conviction, the claims may be barred by *Heck*. In *Heck v. Humphrey*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487. In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order. *Id*. at 486–87.

Plaintiff's allegations, if found to be true, could call into question the validity of his convictions, and he has not alleged that the convictions have already been overturned. Therefore, Plaintiff's claims appear to be barred by *Heck*.

### 3. Improper and/or Immune Defendants

In addition to the fundamental problems with Plaintiff's Complaint described above, many of the defendants that he names are either improper defendants to a § 1983 action or immune from liability.

The State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment. The Eleventh Amendment presents a jurisdictional bar to suits

against a state and "arms of the state" unless the state waives its immunity.  *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)).  Therefore, in the absence of some consent, a suit in which an agent or department of the state is named as a defendant is "proscribed by the Eleventh Amendment."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  It is well established that Congress did not abrogate the states' sovereign immunity when it enacted § 1983.  *Quern v. Jordan*, 440 U.S. 332, 338–45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

For § 1983 purposes, a state official is the state itself when sued in his or her official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  A state officer sued in his or her official capacity also enjoys this protection.  *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017).  "When a suit alleges a claim against a state official in his official capacity, the real party in interest in the case is the state, and the state may raise the defense of sovereign immunity under the Eleventh Amendment."  *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006) (quotation omitted).

The bar also applies when the entity is an arm or instrumentality of a state.  *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000).  In determining whether an entity is an instrumentality or arm of the state for purposes of Eleventh Amendment immunity, the Tenth Circuit has established a two-part inquiry, requiring an examination of:  (1) "the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state," and (2) "the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing." *Duke v. Grady Mun. Sch.*, 127 F.3d 972, 974 (10th Cir. 1997) (citations omitted).  "The

governmental entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury." *Id*. (citations omitted).

Kansas state law clearly characterizes the district courts as arms of the state government—part of a unified judicial branch along with the Kansas Supreme Court and Kansas Court of Appeals. *Wilkins v. Skiles*, No. 02–3190, 2005 WL 627962, at *4 (D. Kan. March 4, 2005); *see generally*, KAN. CONST. art 3. The legislature defines "state agency," for purposes of the state workers' compensation fund, as "the state, or any department or agency of the state, but not including . . . the district court with regard to district court officers or employees whose total salary is payable by counties." K.S.A. 44–575(a). The only court personnel who are not included in the judicial personnel pay system, and are instead paid by the county, are county auditors, coroners, court trustees and personnel in each trustee's office, and personnel performing services in adult or juvenile detention or correctional facilities. K.S.A. 20–162(a), (b).

District and appellate court judges are state officials. *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1256 (D. Kan. 2004), *see also Sigg v. Dist. Court of Allen Cty., Kan.*, No. 11-2625-JTM, 2012 WL 941144, at *4 (D. Kan. March 20, 2012) (district court judge is a state official and official capacity claims against judge for money damages are barred). A county district attorney's office, "to the extent that it is an entity that can be sued, is a branch or agency of the state under applicable law and, therefore, is also immune under the Eleventh Amendment." *Collins v. McClain*, 207 F. Supp. 2d 1260, 1263 (D. Kan. 2002) (citations omitted); *see also White v. Blackwell*, 343 F. App'x 341, 342 (10th Cir. 2009) (damage claim against county prosecutor in her official capacity barred by Eleventh Amendment immunity); *McCormick v. Bd. of Cty. Comm'rs of Shawnee Cty.*, 24 P.3d 739, 746 (Kan. Ct. App. 2001) ("In Kansas, district attorneys are officers of the State.").

Furthermore, state officers acting in their official capacity are not considered "persons" against whom a claim for damages can be brought under § 1983.  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff names state court judges as defendants.  Even if Plaintiff sues the judges in their individual capacities, the state court judges are entitled to judicial immunity.  A state judge is absolutely immune from § 1983 liability except when the judge acts "in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (articulating broad immunity rule that a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . ."); *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).  Only actions taken outside a judge's judicial capacity will deprive the judge of judicial immunity.  *Stump*, 435 U.S. at 356–57.  Plaintiff alleges no facts whatsoever to suggest that the defendant judges acted outside of their judicial capacities.

Plaintiff also names county prosecutors as defendants.  Plaintiff's claims against the county prosecutors fail on the ground of prosecutorial immunity.  Prosecutors are absolutely immune from liability for damages in actions asserted against them for actions taken "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  Plaintiff's claims concerning his criminal case fall squarely within the prosecutorial function.

As for his state court appellate attorney, Plaintiff has not shown that he was acting under color of state law as required to state a claim under § 1983.  *See Polk Cty. v. Dodson*, 454 U.S. 312, 318–19, 321–23 (1981) (assigned public defender is ordinarily not considered a state actor because their conduct as legal advocates is controlled by professional standards independent of the administrative direction of a supervisor); *see also Vermont v. Brillon*, 556 U.S. 81, 91 (2009); *Dunn v. Harper County*, 520 F. App'x 723, 725-26, 2013 WL 1363797 at *2 (10th Cir. Apr. 5,

2013) ("[I]t is well established that neither private attorneys nor public defenders act under color of state law for purposes of § 1983 when performing traditional functions as counsel to a criminal defendant." (citations omitted)).  A criminal defense attorney does not act under color of state law even when the representation was inadequate. *Briscoe v. LaHue*, 460 U.S. 325, 330 n.6 (1983). Plaintiff's claims against his appellate attorney are subject to dismissal for failure to state a claim.

Plaintiff also names the City of Topeka, the City of Kansas City, Kansas, and Clay County, Missouri, as defendants.  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Wright v. City of Ponca City*, 2023 WL 5765848, at *7 (10th Cir. Sept. 7, 2023) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); see also *id.* at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.")). Instead, "the government as an entity" can only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* (quoting *Monell*, 436 U.S. at 694). To establish municipal liability a plaintiff must demonstrate the existence of a "municipal policy or custom." *Id.* (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). Then the "plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Id.* at n.9 (citing *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Bryson*, 627 F.3d at 788)).  Plaintiff has failed to allege a requisite custom or policy or to name a policymaker.

"[T]he Supreme Court has held that in 'limited circumstances,' a failure to train can be the basis for liability under § 1983." *Horocofsky v. City of Lawrence*, 2022 WL 1421554, at *29 (D. Kan. May 5, 2022) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)).  Only when a municipality's failure to train employees evidences a " 'deliberate indifference' to the rights of

inhabitants" can a failure to train be considered "a city 'policy or custom' that is actionable under § 1983." *Id.* (quoting *Canton*, 489 U.S. at 389). To show deliberate indifference, a plaintiff must show that the municipality had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation," and a conscious or deliberate choice to disregard the harm. *Id.* (citation omitted).

Plaintiff's Complaint fails to allege the existence of any custom or policy adopted by a municipal policymaker, or any facts supporting an inference that one exists. This is a requirement for asserting a § 1983 claim against a municipality, and without such allegations, Plaintiff fails to state a claim for relief against any of the named municipalities.

For these reasons, Plaintiff is directed to show good cause why his claims against the Kansas Court of Appeals; Anthony T. Bukaty, clerk's office; Darrin Harris, clerk's office; David Burns, judge; P.J. Hill, judge; Mary E. Christopher, judge; Sam Schirer, attorney with the Appellate Defender's Office; the Wyandotte County District Court; Michael Russell, judge; Chris Herndon, court reporter; Tonda Hill, Wyandotte County District Attorney's Office; Mark Dupree, Sr., Wyandotte County District Attorney's Office; the City of Topeka; the City of Kansas City, Kansas; Clay County, Missouri; and the Clay County Police Department should not be dismissed.

### 4. Motions

Plaintiff has also filed two motions. The first is titled "Motion for Funds to Hire Expert Services" (Doc. 3). Plaintiff asks the Court to provide him with funds to hire a private investigator to expose that a witness lied. The second motion is titled "Motion for Discovery Duces Tecum" (Doc. 4). Plaintiff seeks an order compelling the Wyandotte County District Court and the Wyandotte County prosecutor's office to produce portions of the record from Plaintiff's criminal proceedings, all exhibits missing from the record, all digital recordings from all proceedings in the

case, and the original case file.

The motions are premature and therefore denied.  The case must survive screening before proceeding to discovery.

## IV.  Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this matter without further notice.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Funds to Hire Expert Services (Doc. 3) and Motion for Discovery Duces Tecum (Doc. 4) are **denied**.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **April 3, 2025,** in which to show good cause, in writing, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated March 3, 2025, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**